UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JACE TANNER COLE                                          CIVIL ACTION

VERSUS                                                    18-367-SDD-EWD

DRAGONFLY AVIATION, LLC,
CATHY WALKER REED, and
KEVIN REED

### RULING

This matter is before the Court on the *Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Rule 12(b)(3) Motion to Dismiss for Lack of Proper Venue and, Alternatively, Motion to Transfer Venue*[1] by Defendants Dragonfly Aviation, LLC ("Dragonfly"), Cathy Walker Reed ("Mrs. Reed"), and Kevin Reed ("Mr. Reed") (or collectively, "Defendants"). Plaintiff Jace Tanner Cole ("Cole") filed an *Opposition*[2] to this motion to which Defendants filed a *Reply*.[3] For the following reasons, the Court finds that the Defendants' motion to dismiss should be GRANTED.

### I. FACTUAL BACKGROUND

Cole was a helicopter pilot for Dragonfly from June 10, 2016 until April 24, 2017.[4] This case arises from allegations that Cole's former employers, Mr. and Mrs. Reed, owners and managers of Dragonfly, defamed Cole by allegedly misrepresenting to the Federal Aviation Administration ("FAA") and operators of other aviation companies that

---

[1] Rec. Doc. 9.
[2] Rec. Doc. 17.
[3] Rec. Doc. 21.
[4] *Id.* at 2-3.

49910

Cole had refused to submit to a drug test required by FAA regulations.[5] Dragonfly is a Texas limited liability company. Mr. and Mrs. Reed are Texas residents, and Cole is a Louisiana resident.

Cole alleges that his relationship with Mr. and Mrs. Reed began to deteriorate in November or December of 2016 following a disagreement concerning an employment contract with Dragonfly.[6] The relationship allegedly further deteriorated following a dispute over Cole's purchase of a windsock using Dragonfly's funds.[7] "That issue came to a head," and Cole quit his employment with Dragonfly on April 24, 2017.[8] Cole alleges that "Mr. Reed was angry" that he quit his employment with Dragonfly and told Cole that he would need to submit to an FAA random drug test. Cole was allegedly not told where to report for the drug test and attempted for several days to have Mr. Reed direct him to a drug testing laboratory. After the alleged failure of Mr. Reed to give further instructions, Cole obtained a drug test in Sulphur, Louisiana, which was negative.[9]

Cole alleges that, on May 10, 2017, "individually and on behalf of Dragonfly," Mr. Reed lied about Cole's employment performance to the owner of a Texas aviation company.[10] The misrepresentations included an allegedly false report that Cole had refused a drug test and had stolen several objects from Dragonfly.[11]

---

[5] Rec. Doc. 7.
[6] *Id.* at 2.
[7] *Id.*
[8] *Id.* at 2-3.
[9] *Id.* at 9.
[10] *Id.* at 3.
[11] *Id.*

On May 23, 2017, Mrs. Reed, individually and on behalf of Dragonfly, allegedly filed a false report with the FAA alleging that Cole had refused to submit to a random drug test with no date specified. Mrs. Reed is also alleged to have sent a report to the FAA on June 8, 2017, alleging that Cole had refused a drug test on April 7, 2017. During the FAA's investigation of Mrs. Reed's report, Mr. Reed is alleged to have provided false information to the FAA. Further, Cole claims Mr. Reed "perpetuated that lie" to a "Louisiana businessman" and to an "aviation industry professional" who is highly respected in Louisiana.[12]

Based on the facts alleged above, Cole brings the following eight causes of action against the Defendants: (1) "Defamation by Libel" against Mrs. Reed and Dragonfly based on the allegedly false FAA report;[13] (2) "Defamation by Slander" against Mr. Reed and Dragonfly based on his alleged false information provided to FAA investigators;[14] (3) "Defamation by Slander" against Mr. Reed and Dragonfly based on his alleged false information provided to FAA investigators;[15] (4) "Defamation by Libel" against Mr. Reed for alleged misrepresentations to an unidentified "aviation employer in the State of Louisiana;"[16] (5) "Defamation by Slander/Libel" against Mr. Reed for allegations that Mr. Reed misrepresented to "Cole's potential employer" that Cole had refused a drug test and stolen a "dump trailer;"[17] (6) "Tortious Interference with Business" against Mr. Reed based

---

[12] Rec. Doc. 7, p. 4.
[13] *Id.* at 6.
[14] *Id.* at 7.
[15] *Id.* at 8-9 (Although Counts Two and Three appear the same, they are based on separate contacts with the FAA).
[16] *Id.* at 10.
[17] *Id.* at 11.

49910

on a "text message to a Louisiana businessman;"[18] (7) "Intentional infliction of emotional distress against Mr. Reed" based on Mr. Reed's allegedly defamatory statements made to the FAA and "numerous aviation employers both in the State of Louisiana and in the State of Texas;"[19] and (8) "Intentional infliction of emotional distress" against Mrs. Reed for her alleged misrepresentations made to the FAA.[20]

Defendants now move pursuant to Rule 12(b)(2) to dismiss this suit on the basis that this Court lacks personal jurisdiction over them or to dismiss this suit pursuant to Rule 12(b)(3) for improper venue, and in the alternative, to transfer venue to the Southern District of Texas.

## II. LAW

### A. Personal Jurisdiction

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident.[21] When a district court rules on a motion to dismiss without an evidentiary hearing, the plaintiff need only present a prima facie case of personal jurisdiction.[22] At this stage, uncontroverted allegations in the complaint must be taken as true, and conflicts between the parties' affidavits must be resolved in the plaintiff's favor.[23]

To aid resolution of the jurisdictional issue, a court "may receive interrogatories,

---

[18] *Id.*
[19] *Id.* at 13.
[20] *Id.* at 14-15.
[21] *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985); *Brown v. Flowers Indus., Inc.,* 688 F.2d 328, 332 (5th Cir. 1982, *cert den.* 450 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983).
[22] *Trinity Indus., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229, 230–31 (5th Cir.1995) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73 [1985], and *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773 (5th Cir.1986), *cert. den.*, 481 U.S. 1015 (1987).
[23] *D.J. Inv., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir.1985).

depositions or any combination of the recognized methods of discovery ... But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."[24] "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show that the assertion of jurisdiction would be unfair."[25]

"A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located."[26] Thus, personal jurisdiction over a nonresident defendant attaches only when a defendant is amenable to service of process under the forum state's long-arm statute and the exercise of jurisdiction comports with the due process clause of the fourteenth amendment. In this case, these two queries merge into one because Louisiana's long-arm statute extends jurisdiction coextensively with the limits of the Due Process Clause of the U.S. Constitution.[27]

Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general jurisdiction" over any action brought against the defendant.[28] Where contacts are less pervasive, a court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the

---

[24] *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (holding that a district court erred in requiring a plaintiff to establish more than a prima facie case even after a limited pretrial evidentiary hearing) (internal citations and quotations omitted).
[25] *Id.* at 245 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999)).
[26] *Walk Haydel*, 517 F.3d at 242.
[27] *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *St. Martin & Mahoney v. Patton*, 863 F.Supp. 311, 313–14 (E.D.La.1994).
[28] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

forum."29

### B. General Jurisdiction

General jurisdiction is not in dispute. Cole has not argued that the Court has general jurisdiction over Defendants; rather, he relies on the Court's exercise of specific jurisdiction over these Defendants.30 As Cole has not made *prima facie* showing that the Court may exercise general jurisdiction over Defendants, the Court will turn to whether Cole has established that the Court may exercise specific jurisdiction over Defendants.

### C. Specific Jurisdiction

The constitutional requirements for specific jurisdiction may be satisfied by showing that the defendant has sufficient "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice."31 The Fifth Circuit follows a three-step analysis for this determination. First, a court must determine "whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there."32

This "minimum contacts"/"purposeful availment" inquiry is fact intensive. No one element is decisive, and the number of contacts with the forum state is not, by itself, determinative.33 A single, substantial act directed toward the forum can support specific

---

[29] *Id.* at 414; *Luv N' care, Ltd., v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).
[30] Rec. Doc. 17, p. 5, n. 8.
[31] *Luv N' care*, 438 F.3d at 469 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).
[32] *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *see also Hanson v. Denckla*, 357 U.S. 235, 250–251 (1958).
[33] *Luv N' care*, 438 F.3d at 470.

jurisdiction,[34] but even multiple contacts, if "[r]andom, fortuitous, or attenuated ... are not sufficient to establish jurisdiction."[35] What is significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the privileges or benefits of the laws of the forum state.[36]

Second, a court considers "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts."[37] At this step, the proper focus in the analysis is on the "relationship among the defendant, the forum, and the litigation."[38] This is a claim-specific inquiry, as "the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts."[39]

Finally, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise of jurisdiction would be unfair or unreasonable."[40] In this inquiry, a court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[41] "It is rare to say the assertion [of jurisdiction] is unfair after

---

[34] *See ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir.1990).
[35] *Moncrief Oil*, 481 F.3d at 312 (citing *Burger King*, 471 U.S. at 479 (1985)).
[36] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citing *Hanson* 357 U.S. at 251, 254); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir.1983), *cert. den.*, 466 U.S. 962 (1984).
[37] *Nuovo Pignone*, 310 F.3d at 378.
[38] *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008).
[39] *Conwill v. Greenberg Traurig, L.L.P., et al.*, No. 09-4365, 2009 WL 5178310 at *3 (E.D.La. Dec. 22, 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006)).
[40] *Seiferth*, 472 F.3d at 271 (citing *Burger King*, 471 U.S. at 382).
[41] *Luv N' care*, 438 F.3d at 473; *see also, Burger King Corp.*, 471 U.S. at 476–77 (listing 7 factors).

minimum contacts have been shown."[42]

### D. Minimum Contacts

Personal jurisdiction may not be avoided merely because a defendant did not physically enter the forum state. Although territorial presence frequently will enhance a potential defendant's affiliation with a state and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communication across state lines, thus obviating the need for physical presence within a state in which business is conducted. As long as a commercial actor's efforts are "purposefully directed" toward residents of the state in question, courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.[43]

Although a single act, such as a telephone call or mailing a letter, can be sufficient to establish minimum contacts, precedent is clear that communications alone are insufficient when "the communications with the forum did not actually give rise to [the] cause of action."[44] Rather, when communications relating to conducting business are the only contacts, courts generally require some type of "continuing obligations" between the defendant and residents of the forum, such as is found in an ongoing business relationship, to find that the defendant availed himself of the privilege of conducting business in the forum. Only then, "because his activities are shielded by 'the benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to

---

[42] *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008)(citing *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999)).
[43] *Burger King*, 471 U.S. at 476–77.
[44] *Wein Air*, 195 F.3d at 213; *Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir.1992).

submit to the burdens of litigation in that forum as well."[45]

On the other hand, for claims of intentional tort, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."[46] "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."[47]

## III. ANALYSIS

Defendants argue that this Court cannot exercise specific personal jurisdiction over them because Cole cannot satisfy the Fifth Circuit's three-step specific jurisdiction analysis with respect to any of Cole's eight claims.[48] First, Defendants assert that Cole has not pleaded facts to support a finding that Defendants purposefully directed activities toward Louisiana to satisfy minimum contacts.[49] Second, Defendants argue that none of the eight claims arise out of Defendants' contacts with Louisiana.

Cole contends that the Court's exercise of specific personal jurisdiction over Defendants is proper because the defamation claims arise out of communications purposefully directed toward Louisiana. Further, Cole argues that the Court can exercise specific personal jurisdiction over the claims involving the FAA because the report was "calculated to cause injury to Mr. Cole in Louisiana."[50]

---

[45] *Burger King*, 471 U.S. at 476.
[46] *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (citing *Brown v. Flowers Indus.*, 688 F.2d 328, 332–33 (5th Cir.1984)(holding that one long distance telephone call alleged to constitute defamation was enough to establish minimum contacts)).
[47] *Wein Air*, 195 F.3d at 213 (5th Cir.1999); *see also, Ross*, 246 Fed.Appx. 856, 859–60 (5th Cir. 2007)(deeming allegations that out of state counsel communicated false information to client in Texas alone sufficient to make prima facie case of specific personal jurisdiction).
[48] Rec. Doc. 9-1, p. 11.
[49] See *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002); *see also Hanson v. Denckla*, 357 U.S. 235, 250–251 (1958).
[50] Rec. Doc. 17, p. 10.

In this circuit, specific jurisdiction is a "claim-specific inquiry[.]"[51] "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."[52] Thus, the Court will address the alleged contacts by Defendants and the claims which arise out of those contacts.

### A. Claims arising out of Defendants' alleged contacts with the FAA

Counts One, Two, Three, and Eight are intentional tort claims which arise out of Defendants' FAA report and the subsequent FAA investigation.[53] Based on alleged misrepresentations made to the FAA by Mr. and Mrs. Reed, Cole raises claims of defamation by libel against Mrs. Reed, individually, and on behalf of Dragonfly,[54] two claims of defamation by slander against Mr. Reed, individually, and on behalf of Dragonfly,[55] and intentional infliction of emotional distress against Mrs. Reed, individually.[56] Cole argues that this Court can exercise specific jurisdiction over Defendants because the "report to the FAA was calculated to injure Mr. Cole's career and inflict emotional distress on Mr. Cole in Louisiana."[57]

In support of his argument, Cole relies on *Simon v. U.S.*, in which the Fifth Circuit reversed the district court's failure to exercise specific jurisdiction over an attorney based on misleading statements made by the attorney to a Georgia judge which allegedly caused the issuance of an improper subpoena ticket in Louisiana. The Louisiana plaintiff

---

[51] See *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).
[52] *McFadin v. Gerber,* 587 F.3d 753 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir.2006)).
[53] Rec. Doc. 7.
[54] Count One of the *Complaint*.
[55] Counts Two and Three of the *Complaint*.
[56] Count Eight of the *Complaint.*
[57] Rec. Doc. 17, pp. 8, 10.

failed to respond to the subpoena, and a bench warrant was issued against him. The court found that "the service in Louisiana of the subpoena ticket, improperly issued at the direction of [the defendant], was a cause-in-fact, or substantial factor, in the tort by [the defendant] alleged as a cause of action in [the plaintiff's] complaint."[58] The court further found that "the conduct in Louisiana for which [the defendant] was responsible was a substantial causal factor in producing the tortious injury alleged."[59] In the present case, however, Defendants are not alleged to have directed any conduct within or toward Louisiana.

Cole also relies on *Brown v. Flowers*[60] to support his argument that specific jurisdiction exists over Mrs. Reed as a result of her allegedly defamatory report made to the FAA in Washington, D.C. In *Brown*, the Fifth Circuit reversed the district court and found that personal jurisdiction existed in Mississippi over three nonresident defendants as result of a single phone call by a defendant to a third party in Mississippi.[61] Again, in the present case, there are no allegations that Defendants directed any conduct toward the state of Louisiana.

The Supreme Court has recently reiterated that the jurisdictional inquiry is focused on "the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there."[62] "[T]he proper question is not where the plaintiff experienced

---

[58] *Simon v. United States*, 644 F.2d 490, 498 (5th Cir. 1981).
[59] *Id.* at 499.
[60] *Brown v. Flowers Industries, Inc.,* 688 F.2d 328 (5th Cir. 1982).
[61] 688 F.2d at 332 (5th Cir. 1982).
[62] *Walden v. Fiore*, 571 U.S. 277, 283, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014).

a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[63]

Although Cole argues that Defendants' conduct was "calculated to cause injury" in Louisiana, the Fifth Circuit has cautioned that "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."[64] Here, Defendants, in Texas, are alleged to have made misrepresentations to the FAA in Washington, D.C. For these counts, there are no allegations that Defendants directed any conduct toward Louisiana. Because there are no alleged minimum contacts by any Defendant for Counts One, Two, Three, and Eight arising out of Defendants' alleged contacts with the FAA, the Court lacks specific personal jurisdiction over Defendants for those counts.

### B. Claims arising out of Mr. Reed's alleged contacts with a Louisiana businessman

Counts Four, Six, and Seven will be analyzed together as they are intentional tort claims arising out of the same alleged contact between Mr. Reed and a Louisiana businessman.[65] Cole alleges that Mr. Reed communicated to a "Louisiana helicopter operator and businessman" that Cole had failed a drug test.[66] Cole's *Opposition* identifies the Louisiana businessman as "Mr. Mike Satterfield."[67] Cole attaches a screenshot of a

---

[63] *Id.* at 1125.
[64] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999).
[65] Rec. Doc. 7, pp. 10, 12.
[66] Rec. Doc. 7, p. 10.
[67] Rec. Doc. 17, p. 11.

49910

purported text message conversation between Mr. Reed and Mike Satterfield,[68] and Mr. Reed admits to a conversation with Mr. Satterfield in his affidavit.[69]

Defendants argue that the alleged communication from between Mr. Reed and a Louisiana businessman does not confer personal jurisdiction over Mr. Reed for the intentional tort claims. Defendants rely on *Sangha v. Navig8 ShipManagement Private Ltd.*[70] to support their argument. In *Sangha*, the plaintiff was a captain for Navig8 when the vessel he captained was involved in a collision. Navig8 declined to renew the plaintiff's employment, and the plaintiff obtained new employment with another company based in Alabama.[71] The plaintiff's new employer contracted to perform work with the plaintiff's previous employer, Navig8. By email, Navig8 informed the plaintiff's current employer in Alabama of the collision, and the plaintiff's contract with his current employer was terminated. The plaintiff sued Navig8 under various tort theories.[72] The district court dismissed the claims for lack of personal jurisdiction, and the Fifth Circuit agreed that the plaintiff did not allege sufficient contacts to subject Navig8 to personal jurisdiction in Texas.[73] The court explained that "Navig8's contacts with the state have to be purposeful and not merely fortuitous . . . Even though Navig8's email communications happened to affect [the plaintiff] while he was at the Port of Houston, this single effect is not enough to confer specific jurisdiction over Navig8."[74] In that case, there were no alleged purposeful

---

[68] Rec. Doc. 17-3, p. 3; Screenshot of text message conversation.
[69] Rec. Doc. 9-3, p. 2.
[70] 882 F. 3d 96 (5th Cir. 2018).
[71] *Id.* at 98-99.
[72] *Id.* at 99.
[73] *Id.* at 103.
[74] *Id.*

49910

contacts with the forum state, Texas. Here, it is alleged that Mr. Reed sent defamatory text messages to a Louisiana resident.

In *Brown*, discussed above, the Fifth Circuit held that personal jurisdiction in Mississippi was proper over a non-resident who made a phone call to Mississippi defaming a Mississippi resident.[75] However, the Fifth Circuit emphasized that the defendant initiated the defamatory phone call.[76] Here, the record demonstrates that the alleged text message conversation between Mr. Reed and the Louisiana resident was not initiated by Mr. Reed.[77]

In *Delta Brands Inc. v. Danieli Corp.,* the Fifth Circuit found the initiation of contact significant in holding personal jurisdiction not valid.[78] There, the court explained that the plaintiff had not alleged that the defendant's misrepresentations "arose out of contacts initiated by [the defendant], rather than contacts initiated by [the plaintiff]."[79] Here, although the contact was initiated by a third person, Cole has failed to allege that the contacts with Louisiana were initiated by Mr. Reed. In fact, Cole's own supporting documents demonstrate the opposite.[80] In *Wilson v. Belin*, the Fifth Circuit held that personal jurisdiction in a defamation case could not rest on a nonresident defendant's response to one uninitiated, unsolicited phone call.[81] Likewise, the Court here finds that

---

[75] 688 F.2d 328 (5th Cir. 1982).
[76] *Id.* at 334 & n. 15.
[77] Rec. Doc. 17-3, p. 3; Rec. Doc. 9-3, p. 3.
[78] 99 F. App'x 1, 8 (5th Cir. 2004).
[79] *Id.*
[80] Rec. Doc. 17-3, p. 3.
[81] 20 F. 3d 644 (5th Cir. 1994).

specific personal jurisdiction cannot rest on Mr. Reed's reply to an unsolicited text message from a third party.

Cole relies on *Trois v. Apple Tree Auction Center, Inc.*,[82] to support his argument that a court can exercise specific personal jurisdiction over a party who responds to an unsolicited communication. In *Trois*, a recent Fifth Circuit case, a collector in Texas made an agreement through several conference calls to sell some of his collectibles in an auction house in Ohio.[83] The collector alleged that the president of the auction house made misrepresentations during the uninitiated conference calls and sued the president in Texas for breach of contract and fraud.[84]

The Fifth Circuit rejected specific jurisdiction for breach of contract but found purposeful availment for the intentional tort of fraud.[85] Although the court cited several cases which permitted the exercise of specific personal jurisdiction over an intentional tortfeasor who places a call to a forum and makes false statements over the phone to a forum resident,[86] the Fifth Circuit noted that, "in *Wilson v. Belin*, we held that personal jurisdiction in a defamation case could not rest on a nonresident defendant's tortious response to one uninitiated, unsolicited phone call."[87] The court found that the facts of

---

[82] 882 F. 3d 485 (5th Cir. 2018).
[83] *Id.* at 488.
[84] *Id.*
[85] *Id.* at 489.
[86] *Id.* at 491 (See *Brown*, 688 F.2d 328, 332, 334 (5th Cir. 1982) (holding one defamatory phone call initiated by defendant sufficient to established personal jurisdiction*); Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F. 3d 309, 314 (5th Cir. 2007) ( "When a nonresident defendant commits a tort within the state … that tortious conduct amounts to sufficient minimum contacts … to exercise personal adjudicative jurisdiction … ); *Wien Air Alaska, Inc.* 195 F. 3d 208, 213 (5th Cir. 1999)('When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.")).
[87] *Id.*

*Trois* fell "within the fuzzy boundaries of the middle of the spectrum."[88] The court explained that the defendant in *Trois* "was not a passive participant on the call. Instead, he was the key negotiating party who made representations regarding his business in a call to Texas."[89] Here, the Court finds that the allegations fall toward the *Wilson* end of the spectrum because Mr. Reed does not appear to have purposefully availed himself of the privileges of Louisiana by responding to an unsolicited inquiry concerning Cole.

In *Wilson,* the court found that it lacked specific personal jurisdiction over the defendants because their alleged defamatory comments were merely in response to an unsolicited phone call made from within the forum.[90] There, Wilson claimed to use photo enhancement technology to glean more information concerning the John F. Kennedy assassination and presented his alleged findings in Dallas. A Dallas reporter called two non-resident officials involved in the official investigation who made statements discrediting Wilson's methods. Wilson sued the officials for their allegedly defamatory statements.[91] The court found that it lacked specific personal jurisdiction because "the defendants did not execute a prearranged plan by initiating a communication to Texas aimed at a Texas resident."[92] Similarly, Mr. Reed's contact with a Louisiana resident is not alleged to be part of a prearranged plan or initiated by Mr. Reed. Mr. Reed simply responded to an inquiry from a Louisiana resident concerning a former employee.[93]

---

[88] *Id.*
[89] *Id.*
[90] *Wilson*, 20 F. 3d at 649 (5th Cir. 1994).
[91] *Id.*
[92] *Id.*
[93] Rec. Doc. 17, p. 13 ("While it is true that Mr. Reed responded to an inquiry from Mr. Satterfield regarding Mr. Cole's employment with Dragonfly, Mr. Reed was not a passive participant in the communication.").

The Court finds the facts of *Wilson* most analogous to the present case. Further, although not alleged in the *Complaint*, Cole's *Opposition* states that Mr. Reed sent the text messages to "Mr. Satterfield, who resides and whose principal place of business is in Franklin, Louisiana[.]"[94] Franklin is in St. Mary Parish, Louisiana, which is in the Western District of Louisiana. For the reasons above, the Court lacks personal jurisdiction over Mr. Reed for the allegations contained in Counts Four, Six and Seven.

### C. Count Five arising out of Mr. Reed's alleged contact with a Texas resident

Count Five arises from Mr. Reed's alleged statements to Cole's potential employer.[95] In the body of the *Complaint*, it appears that the "potential employer" is "the owner of an aviation company in Texas."[96] Mr. Reed is alleged to have told the potential employer that Cole refused a drug test and stole various equipment from Mr. Reed's airport hangar. There are no alleged contacts or communications within or directed toward Louisiana in Count Five. As discussed at length above, and as Fifth Circuit precedent has made clear, the mere fact that Cole resides in Louisiana is insufficient to confer personal jurisdiction over Mr. Reed for this claim.[97] Therefore, the Court lacks personal jurisdiction over Mr. Reed for communications directed from one Texas resident to another.

### D. Claims arising out of Dragonfly's alleged contacts with the forum

Cole "does not argue that this Court exercises general jurisdiction over Defendants."[98] Because the Court found no basis to exercise specific jurisdiction over Mr.

---

[94] Rec. Doc. 17, p. 12.
[95] Rec. Doc. 7, p. 12.
[96] *Id.* at 3.
[97] *Walden*, 134 S.Ct. at 1125 (2014).
[98] Rec. Doc. 17, p.5, n. 8.

and Mrs. Reed, and a "business entity can act only through its officers, employees, and other agents,"[99] the Court also declines to exercise specific personal jurisdiction over Dragonfly. Cole has not alleged any acts of other officers or employees, other than Mr. and Mrs. Reed, that give rise to any of the claims contained in the *Complaint*.[100] Thus, Cole has not pled a prima facie case for asserting personal jurisdiction over Dragonfly. Because the Court finds that neither specific nor personal jurisdiction exists over any Defendant for any claim, the issues regarding venue need not be considered.

## IV. CONCLUSION

For the reasons set forth above, Defendants' *Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Rule 12(b)(3) Motion to Dismiss for Lack of Proper Venue and, Alternatively, Motion to Transfer Venue*[101] is GRANTED on the Rule 12(b)(2) motion for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>March 7, 2019</u>.

_____
**SHELLY D. DICK, CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[99] *Am. Realty Tr. Inc. v. Matisse Capital Partners LLC*, 91 F. App'x 904, 911 (5th Cir. 2003).
[100] Rec. Doc. 7.
[101] Rec. Doc. 9.

49910